Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner with minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 23 February 1999 as:
 STIPULATIONS
1. Defendant denied this claim pursuant to a Form 61 filed with the Industrial Commission on or about 18 November 1997.
2. Stipulated into evidence in this matter were medical records from Raleigh Neurology Associates, Duke University Medical Center, and records from an independent medical evaluation at the Bowman Gray School of Medicine.
***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the alleged injury or occupational disease giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On the date of the alleged injury or occupational disease giving rise to this claim, an employment relationship existed between plaintiff and defendant.
3. On the date of the alleged injury or occupational disease giving rise to this claim, defendant was self-insured, with Gates McDonald acting as its servicing agent for workers compensation purposes.
4. On the date of the hearing before the Deputy Commissioner, plaintiff was 51 years old and residing in Raleigh, North Carolina. Plaintiff has a college degree, and in addition has taken computer courses and done some graduate work. Plaintiff has worked with computers for twenty years, and as of the date of the hearing before the Deputy Commissioner remained employed by defendant.
5. Defendant first employed plaintiff in 1984, but plaintiff left that employment for a brief period of time. Plaintiff returned to work for defendant in September 1986. From 1986 through 1995 plaintiff was a fields support person for application programmers, and since 1995 plaintiff has been a systems analyst.
6. Plaintiffs job as a systems analyst requires him to work extensively with computers. In 1995, defendant transferred part of its operation to New Jersey, causing plaintiffs workload to increase. Plaintiff became responsible for a lot of typing and keyboarding of information and documentation. From August 1995 through December 1996 plaintiff worked 50 to 80 hours per week, with 60% to 80% of the work requiring keyboarding. Plaintiff had to do significantly more keyboarding during this period than in the work he performed prior to August 1995.
7. In September or October 1996, plaintiff began to experience numbness, pain, and weakness in his hands. Plaintiff presented to his family physician, Dr. Sheila Marshall, with complaints of bilateral hand numbness and pain. Dr. Marshall could find nothing objectively wrong, so she referred plaintiff to Dr. Gregory Bertics, a neurologist, for EMG/nerve conduction studies, which were performed on 19 November 1999.
8. Dr. Bertics noted some unusual findings as a result of plaintiffs EMG/nerve conduction studies. Plaintiffs hands were atrophied and weak, and Dr. Bertics expected to find nerve damage, specifically a C8 radiculopathy, causing plaintiffs complaints. The nerve conduction studies, however, found no evidence of nerve damage. Dr. Bertics then did the electromyogram (EMG), but instead of evidence of nerve damage, Dr. Bertics noted characteristics consistent with muscle degeneration. In addition, previous MRIs of plaintiffs brain and cervical spine were normal. These test results suggested to Dr. Bertics that plaintiff had some sort of myopathy, or muscle degeneration, as opposed to the expected neuropathy, or nerve damage.
9. Further evaluations and testing, including a biopsy, revealed that plaintiff suffers from a hereditary, progressive, degenerative disease that is a variant of muscular dystrophy. Dr. Bertics diagnosed plaintiff with a distal myopathy, which is a type of muscular dystrophy that affects the distal as opposed to proximal muscles. Dr. Richard W. Tim at the Muscular Dystrophy Clinic at Duke University Medical Center concurred with this diagnosis, as did Dr. James Caress at the Bowman Gray School of Medicine, who specifically characterized the myopathy as Welander distal myopathy. This disease causes progressive muscle deterioration in the affected areas.
10. While plaintiffs distal myopathy was an underlying, preexisting condition, it was asymptomatic until plaintiff began working a great deal of overtime with a marked increase in keyboarding. Because of this underlying, preexisting condition, plaintiffs hands were weak, therefore predisposing plaintiff to symptoms of numbness and pain in his hands caused by overuse. This numbness and pain experienced by plaintiff were not due directly to plaintiffs distal myopathy, but were due to overuse or repetitive motion syndrome superimposed upon his distal myopathy.
11. Plaintiffs distal myopathy is not casually related to his job as a systems analyst with defendant. However, the overuse at work from August 1995 through December 1996 of plaintiffs hands, which were weak because of the distal myopathy, caused plaintiff to experience pain and numbness in his hands. Plaintiff would not have suffered these same difficulties, or at least to the extent that he did, had he not had to repetitively use his hands at work.
12. While plaintiffs superimposed repetitive motion syndrome may have been caused by plaintiffs excessive keyboarding and overtime work, there is no evidence of record to prove by its greater weight that plaintiffs contraction of this condition was due to causes and conditions characteristic of and peculiar to his occupation as a systems analyst.
13. Plaintiff has been able to continue working as a systems analyst for defendant because defendant supplied plaintiff with adaptive technologies including voice recognition software, thereby eliminating plaintiffs need to keyboard. In addition, plaintiffs hours have been reduced so that he is no longer working excessive overtime hours. As a result of plaintiffs distal myopathy and superimposed repetitive motion syndrome, plaintiff missed approximately six days from work.
14. At the hearing before the Deputy Commissioner, the parties were ordered to produce either a Form 22 wage chart or a stipulation regarding plaintiffs average weekly wage on 10 December 1996. Because neither was produced subsequent to the hearing, the Deputy Commissioner relied upon the testimony generated at the hearing to find that plaintiff earned sufficient wages to entitle him to the maximum compensation rate for 1996, which is $492. 00. Having reviewed the record, the Full Commission affirms the average weekly wage as found by the Deputy Commissioner.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. While there is evidence of causation, there is insufficient evidence of record to prove by its greater weight that plaintiffs occupation as a systems analyst placed him at an increased risk of developing numbness and pain in his hands, as there is no evidence that these symptoms are characteristic of and peculiar to this occupation. N.C. Gen. Stat. 97-53(13).
2. Plaintiff, therefore, is entitled to no compensation under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law plaintiffs claim must be, and the same is, HEREBY DENIED.
2. Each side shall bear its own costs.
This the ___ day of July, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER